UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 3:06CR233(AHN) |
| | : | |
| ALEKSANDER DUBOGRYZOV | : | |

RULING ON MOTION TO SUPPRESS

The indictment in this case charges the defendant, Aleksander Dubogryzov ("Dubogryzov"), along with Tatiana Conte ("Conte") and Irina Bissell ("Bissell"), with conspiring to transport and transporting an individual in interstate commerce to engage in prostitution in violation of 18 U.S.C. §§ 371 and 2421, and conspiring to commit money laundering of the proceeds of prostitution in violation of 18 U.S.C. 1956(a)(1)(B)(i). On August 31, 2007, just days before jury selection, Dubogryzov moved to suppress his post-arrest statement. On September 5, 2007, the court denied the motion without opinion and without holding an evidentiary hearing.[1] The purpose of this ruling is

---

[1] Dubogryzov did not submit an affidavit to support the factual allegations in his motion. In the absence of an affidavit from an individual with personal knowledge of the facts, Dubogryzov failed to demonstrate any disputed facts that would justify an evidentiary hearing and thus his motion was properly denied without one. E.g., United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967); United States v. Diaz, 303 F. Supp. 2d 84, 93-94 (D. Conn. 2004); United States v. Ruggiero, 824 F. Supp. 379, 393-94 (S.D.N.Y. 1993). The factual assertions made by Dubogryzov's counsel in the motion to suppress are insufficient to satisfy Dubogryzov's burden of demonstrating disputed factual issues that warrant an evidentiary hearing. See United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969);

to explain why the motion was denied.

## FACTS

According to the indictment, Dubogryzov is a native and citizen of the Ukraine. He was born on August 24, 1962. He came to the United States in 1989 and was subsequently granted refugee status. Conte, one of Dubogryzov's alleged co-conspirators, is a native and citizen of Russia and is a lawful permanent resident of the United States.

On September 14, 2006 at approximately 3:30 p.m., while Dubogryzov, Conte, and Camila Myrtaezalueva ("Myrtaezalueva"), who was believed to be Dubogryzov's girlfriend, were at the Lexus dealership in Westport, Connecticut, Dubogryzov and Conte were arrested by special agents of the FBI pursuant to federal arrest warrants. There were six FBI agents present at the time of the arrest, one ICE agent, and a Sergeant from the Norwalk, Connecticut police department. After the agents secured the dealership, Conte and Dubogryzov were put into separate rooms.[2]

---

United States v. Caruso, 684 F. Supp. 84, 87 (S.D.N.Y. 1988); United States v. Garcia, 272 F. Supp. 286, 290 (S.D.N.Y. 1967). To the extent Dubogryzov relys on factual information contained in FBI 302 forms, the court considered those facts in determining the merits of his motion.

[2]The majority of the facts are taken from the affidavit of FBI Special Agent Sean D. O'Malley ("O'Malley"), the case agent, who was present at the arrest and interviewed Dubogryzov. SA O'Malley's affidavit was submitted by the government in opposition to the motion to suppress. Other facts are taken from the FBI 302 forms submitted as exhibits to the motion.

FBI Special Agent John A. Stroebelle ("Stroebelle"), who is functionally proficient in Russian, read Dubogryzov his Miranda rights in Russian and then gave him an advice of rights form written in Russian and asked him to read it.  Dubogryzov read the advice of rights form, stated that he understood his rights, and signed the form.  SA Stroebelle indicated in the space provided on the form that the time was 4:06 p.m.  During SA Stroebelle's interactions with Dubogryzov, Dubogryzov spoke to him in English, did not appear to be intoxicated or incapacitated in any way, and appeared to understand what was happening.

While SA Stroebelle was with Dubogryzov, SA O'Malley and the other agents were otherwise occupied.  They secured the dealership and spoke with the occupants, administered Miranda rights to Conte, secured Conte's vehicle, and dealt with issues relating to Myrtaezalueva's residence status and her transportation home.  SA O'Malley also contacted AUSA Krishna Patel ("Patel") and informed her that Dubogryzov and Conte had been arrested.  AUSA Patel told SA O'Malley that she would make arrangements for Dubogryzov's and Conte's presentment.  A short time later, AUSA Patel called SA O'Malley and advised him that the magistrate judge had authorized the agents to hold Dubogryzov overnight for presentment the following morning.[3]

---

[3]AUSA Patel advised Magistrate Judge Fitzsimmons at approximately 4:00 p.m. that Dubogryzov and Conte had been arrested.  According to the transcript of Dubogryzov's

Dubogryzov and Conte were then transported in separate vehicles to the FBI office in Bridgeport, Connecticut.[4] SA O'Malley rode with Conte. When they arrived at the FBI office, Dubogryzov was placed in a conference room while they waited for a translator to arrive. He was given a newspaper and a bottle of water. A single handcuff was applied to his ankle.

SA O'Malley interviewed Conte first. After that interview was completed, at approximately 7:40 p.m. SA O'Malley began questioning Dubogryzov. Before beginning the interview, Inna Landowne[5] ("Landowne"), an FBI contract linguist, advised Dubogryzov again of his Miranda rights in Russian. Dubogryzov was also given another Miranda rights form written in Russian. He read the form, initialed each paragraph, signed it, and acknowledged that he understood his rights. SA O'Malley also signed the form and indicated the time as 7:40 p.m.

---

presentment on September 15, 2006, Magistrate Judge Fitzsimmons, at approximately 5:00 p.m., authorized the agents to hold Dubogryzov overnight. The overnight hold was apparently necessary because the court could not make arrangements for a Russian interpreter and for counsel to represent the defendants before the court staff left for the day.

[4]Dubogryzov asserts that the trip from the Lexus dealership in Westport to the FBI office in Bridgeport would have only taken approximately 15 minutes. However, as the government points out, because of the heavy rush hour traffic on I-95 northbound at that time of day, a trip from Westport to Bridgeport can take, on a good day, at least 45 minutes to an hour.

[5]Inna Landowne was born in Belarus and is a native Russian speaker.

SA O'Malley then asked Dubogryzov whether he wished to speak to him. Dubogryzov stated that he did. At Dubogryzov's request, the interview was conducted in English, but Landowne was present in case Dubogryzov needed to consult with her. The interview concluded at 8:40 p.m. Dubogryzov was then given a waiver of speedy arraignment form in English. Landowne translated the form into Russian for him and Dubogryzov indicated that he understood it and signed it. Landowne and SA O'Malley also signed the form and SA O'Malley indicated the time to be 8:45 p.m.

At approximately 8:50 p.m. Dubogryzov placed a telephone call, was offered a snack, and was transported to the Stratford, Connecticut police department for overnight detention.

O'Malley states that during the entire time he was with Dubogryzov, he did not appear to be incapacitated in any way and did not observe any issues related to alcohol.

Dubogryzov was detained overnight and was presented before Magistrate Judge Fitzsimmons the following morning.

## DISCUSSION

Dubogryzov moves to suppress his post-arrest statement on the grounds that (1) there was an unreasonable delay of more than six hours between the time of his arrest and his presentment and his statement was obtained during that period, (2) he did not knowingly and voluntarily waive his right to a speedy presentment, and (3) his statement was the product of

impermissible persuasion that resulted from the overwhelming force demonstrated by the number of law enforcement officers who descended on the car dealership and arrested, handcuffed, searched, and detained him. In opposition, the government asserts that (1) Dubogryzov did not timely file the motion and thus waived his right to move to suppress his statement and has failed to make the required showing of good cause to excuse the delay, and (2) there was no unnecessary delay prior to his presentment and his statement was made within six hours of his arrest. The court agrees that there is no factual or legal support for Dubogryzov's motion.

I.   Timeliness of Motion/Waiver

Rules 12(b)(3) and 12(c) of the Federal Rules of Criminal Procedure require a defendant to file a motion to suppress by the date set by the court. Failure to file a timely motion constitutes a waiver. United States v. Howard, 998 F.2d 42, 52 (2d Cir. 1993) (citing Fed. R. Crim. P. 12(f)). The district court may grant relief from the waiver if the defendant makes a showing of cause for his non-compliance and actual prejudice. Id.

Here, the deadline set by the court for Dubogryzov to file a motion to suppress was January 15, 1997. Dubogryzov's motion to suppress was not filed until August 31, 2007. He has not made the required threshold showing of good cause for the failure to

timely file this motion and he has not demonstrated any prejudice. Absent this showing, the court does not need to address the merits of his motion. United States v. Ulloa, 882 F.2d 41, 43 (2d Cir. 1989).

II. Unnecessary Delay

The Federal Rules of Criminal Procedure require federal agents making an arrest to present a defendant before a judicial officer "without unnecessary delay." Fed. R. Crim. P. 5(a) & 9(c). Pursuant to 18 U.S.C. § 3501, a district court has the discretion to suppress a post-arrest statement if there is more than a six hour delay between a defendant's arrest and his presentment and the court finds the delay to be unreasonable under the circumstances. United States v. Fullwood, 86 F.3d 27, 31 (2d Cir. 1996); United States v. Perez, 733 F.2d 1026, 1030 (2d Cir. 1984). But Section 3501(c) further provides that a statement "shall not be inadmissible solely because of delay in bringing the defendant before a judicial officer if such confession was made or given by such person within six hours immediately following his arrest or other detention." United States v. Fullwood, 86 F.3d at 31.

Here, Dubogryzov gave his statement five hours and ten minutes after his arrest. He was arrested at approximately 3:30 p.m. SA O'Malley began interviewing him at 7:40 p.m. and the interview was concluded one hour later, at 8:40 p.m. Further,

the delay between his arrest and his presentment before Magistrate Judge Fitzsimmons the following morning was reasonable and justified in that it was attributable to routine arrest processing, routine questioning, travel time, overnight lodging while awaiting the availability of the magistrate judge, and other routine procedural issues, including the need to arrange for Russian translators and counsel.  See e.g., <u>United States v. Jaswal</u>, 47 F.3d 539, 542 (2d Cir. 1995) (holding that suppression is not warranted where justifiable circumstances delayed the defendant's appearance before the magistrate and there was no evidence of any kind of coercion); <u>United States v. Isom</u>, 588 F.2d 858, 863 (2d Cir. 1978) (holding that the time period in which the defendant is housed overnight should not enter into the calculation of unnecessary delay); <u>United States v. Marrero</u>, 450 F.2d 373, 378 (2d Cir. 1971) (noting that there is ample authority for the proposition that overnight lodging for purpose of arraignment the next morning is not unnecessary or unreasonable delay); <u>United States v. Collins</u>, 462 F.2d 792, 795-96 (2d Cir. 1972) (holding that a 21 hour delay between arrest and confession and a 26 hour delay between arrest and arraignment was not unreasonable because the majority of that time was spent in transit, routine processing and overnight lodging).  Thus, even though Dubogryzov was not presented until the morning after his arrest, the delay between his arrest and presentment was not

unreasonable within the meaning of Fed. R. Crim. P. 5(a) and 18 U.S.C. s 3501(c).

More significant, however, is the fact that Dubogryzov gave the statement within six hours of his arrest, and so any pre-arraignment delay would not render it inadmissible. United States v. Isom, 588 F.2d at 863. And Dubogryzov does not claim, nor do the facts suggest, that there was any purposeful delay or lengthy, prolonged, or coercive interrogation. See United States v. Rubio, 709 F.2d 146, 153 (2d Cir. 1983) (finding no error in denying a motion to suppress a statement made during a reasonable two-day weekend pre-arraignment delay where there was no purposeful postponement of the arraignment or lengthy, hostile, or coercive interrogation). To the contrary, AUSA Patel contacted Magistrate Judge Fitzsimmons shortly after Dubogryzov was arrested in the late afternoon and she authorized the agents to detain Dubogryzov overnight to give the court time to arrange for a Russian translator and counsel.[6] And SA O'Malley's interview of Dubogryzov was not prolonged -- it lasted for only one hour.

Because there was no unreasonable delay in Dubogryzov's

---

[6] Beside the fact that the court did not have sufficient time that afternoon to arrange for a Russian translator and counsel for Dubogryzov and Conte, it is highly unlikely that the agents could have transported Dubogryzov to Bridgeport before the court staff left for the day. Thus, it was practical and reasonable to schedule the presentment for the next morning.

presentment, and because the court authorized his overnight hold, the agents did not need to obtain a waiver of his right to a speedy presentment and the issue of whether he voluntarily executed the waiver is moot.

III. Impermissible Persuasion

Dubogryzov also maintains that his statement should be suppressed because it was the product of impermissible persuasion by government agents. In support of this claim he says that he was arrested in a show of overwhelming force consisting of numerous law enforcement agents who "descended upon a residential car dealership[7] and arrested, handcuffed, searched and detained him ... at the dealership, transported [him] to Bridgeport, and detained [him] at the FBI office."

Contrary to Dubogryzov's assertion, there is nothing in the record to indicate that the agents subjected him to any coercion or intimidation or that the totality of the circumstances surrounding his arrest and interrogation suggest that his free will was overborne. See Green v. Scully, 850 F.2d 894, 901-02 (2d Cir. 1988). Rather, the government has sustained its burden of proving that under the totality of the circumstances, including Dubogryzov's personal characteristics, the conditions

---

[7] It is unclear what Dubogryzov means by a "residential car dealership." The facts in the record show that he was arrested at a commercial establishment, namely, the Lexus car dealership in Westport, Connecticut.

of his interrogation, and the conduct of the agents, see id. at 902, his statement was given knowingly and voluntarily.

There is no dispute that the agents advised Dubogryzov of his Miranda rights on two separate occasions before he gave his statement. The first time was shortly after his arrest, while he was still at the Lexus dealership, and the second time was when he was at the FBI office in Bridgeport, just before SA O'Malley began questioning him. On each occasion, his Miranda rights were read aloud to him in Russian, he was given an advice of rights form written in Russian which he read and signed, and he stated that he understood his rights. Dubogryzov was not mistreated in any way and was not deprived of food or sleep. Rather, he was offered something to drink and eat, and was given a newspaper to read while he waited for SA O'Malley to finish interviewing Conte. Dubogryzov was not suffering from any debilitating physical condition and he did not appear to be under the influence of alcohol or drugs.[8] After Dubogryzov consented to being questioned, the interrogation, which was conducted by only one FBI agent, lasted for only sixty minutes. Moreover, despite the presence of a Russian translator during the entire interview, Dubogryzov elected to proceed in English.

---

[8]The assertion that Dubogryzov was "in the process of alcohol withdrawal, having very recently attempted to cease drinking" is totally lacking in factual support and is contradicted by SA O'Malley's and SA Stroebelle's observations.

The fact that numerous agents participated in the arrest, that the arrest occurred in a commercial establishment, and that Dubogryzov may have been handcuffed, searched, and detained does not change the conclusion that his statement was freely, knowingly, and voluntarily given and was not the product of any type of coercion or an overborne will.

## CONCLUSION

For the foregoing reasons, Dubogryzov's motion to suppress his post-arrest statement [doc. # 78] was DENIED.

Dated this 1st day of October, 2007 at Bridgeport, Connecticut.

/s/_____
         Alan H. Nevas
     United States District Judge